**In re Anonymous No. 5 D.B. 76**

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

PEARLSTINE, *Board Member*, November 20, 1978—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (Pa.R.D.E.) the Disciplinary Board of the Supreme Court of Pennsylvania (board), herewith submits its findings and recommendations to your honorable court with respect to the above preceedings:

## I. HISTORY OF PROCEEDINGS

### Charge I

On February 9, 1976, a petition for discipline was filed by chief disciplinary counsel against respondent. It was alleged in that petition as Charge I that respondent violated seven disciplinary rules of the Code of Professional Responsibility as follows:

a. D.R. 1-102(A)(3): A lawyer shall not engage in illegal conduct involving moral turpitude;

b. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

c. D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

d. D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

e. D.R. 2-106(A): A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee;

f. D.R. 2-106(B): A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee . . . ;

g. D.R. 7-102(A)(5): In representation of a client, a lawyer shall not knowingly make a false statement of law or fact.

The thrust of the complaint as to Charge I is that respondent filed a false petition seeking counsel fees in connection with a court appointment in the case of Com. v. [ ] in the Court of Common Pleas of [ ] County.

## Charge II

The thrust of this charge is that [A] died on September 8, 1961, leaving as her only asset a house located at [ ] Street, [ ], Pa. [B] was granted letters of administration. His sister [C] consulted respondent on February 9, 1965, paid him an initial fee of $20 to represent her as a beneficiary of decedent's estate, and on August 20, 1965, he received an additional $80 on account of his fee. On November 10, 1965, he filed a petition for letters of administration d.b.n. with the Register of Wills of [ ] County on behalf of his client and on the same day letters of administration were granted to him. [ ] Medical Center had a claim of $741.70 against the estate. A loan was arranged whereby the sum of $2,962.97 was procured, of which $300 was paid to a Mr. [ ], who arranged to procure the loan, and a check for $741.70 was sent to the [ ] Medical Center. When the proceeds of the loan were sent to

respondent, he again made a payment to the [  ] Medical Center in the sum of $1,026.61. Respondent contends that he was only engaged to have Mrs. [C's] brother removed as administrator and that he did not represent the estate and that any action he took thereafter was not as counsel for the estate. It does not appear that any of the following disciplinary rules were violated, viz.:

a. D.R. 1-102(A)(3): A lawyer shall not engage in illegal conduct involving moral turpitude;

b. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

c. D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

d. D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

e. D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

f. D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of a client through reasonably available means;

g. D.R. 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

h. D.R. 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship.

i. D.R. 9-102(A): All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein;

j. D.R. 9-102(B)(3): A lawyer shall maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them;

k. D.R. 9-102(B)(4): A lawyer shall promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

## Charge III

It is alleged in the petition that respondent violated nine rules of the Code of Professional Responsibility as follows:

a. D.R. 1-102(A)(3): A lawyer shall not engage in illegal conduct involving moral turpitude;

b. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

c. D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

d. D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

e. D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

f. D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of a client through reasonably available means;

g. D.R. 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

h. D.R. 7-101(A)(3): A lawyer shall not intention-

ally prejudice or damage his client during the course of the professional relationship;

i. D.R. 7-102(A)(5): In representation of a client, a lawyer shall not knowingly make a false statement of law or fact.

The thrust of the complaint resulting in the filing of these charges is that respondent in June of 1970 was engaged by one [D] to represent her in a legal action against her landlord arising out of an accident and the injury she had incurred as a result thereof. The accident occurred on February 27, 1969, when she suffered a fall at her apartment located at R.D. [ ], [ ], Pa. This engagement was via the telephone. Respondent prepared a complaint for the signature of Mrs. [D] which alleged that the accident occurred on February 27, 1969. Respondent failed to file the complaint within the period prescribed by the statute of limitations and when he discovered that fact he removed the first page of the complaint which contained the date February 27, 1969, and changed the first page to allege that the date of the accident was on March 1, 1969. On or about March 1, 1971, he filed the false complaint in the Office of the Prothonotary of the Court of Common Pleas of [ ] County. The matter was initially referred to Disciplinary Hearing Committee [ ], but because of an abstention and a request for relief, because of extended trial of the chairman, the members conducted a hearing on October 11, 1976, October 12, 1976, and October 13, 1976. The matter was held in abeyance pending filing of briefs and the committee convened a dispositional hearing on November 10, 1977, pursuant to section 89.151 of the Rules of the Disciplinary Board.

On June 27, 1978, the hearing committee filed its report recommending that respondent be suspended from practice of law for six months. On June 17, 1978, brief on exceptions was filed by disciplinary counsel and on August 7, 1978, brief on exceptions by counsel for respondent was filed requesting oral argument. A panel consisting of John C. Anderson, chairman, Henry T. Reath and Raymond Pearlstine was designated to hear oral argument on September 13, 1978. A supplemental brief was filed by [ ], Esq. on behalf of respondent on September 7, 1978, and the oral argument of counsel for petitioner and respondent and the brief submitted were thoroughly considered by the panel.

The hearing committee concluded as follows:

1. That respondent was guilty of unprofessional conduct in Count No. I, in violating Disciplinary Rules 1-102(A)(4); 2-106(A); 7-102(A)(5).

2. That respondent was guilty of unprofessional conduct in Count No. III, in violating Disciplinary Rules 1-102(A)(4); 7-101(A)(1); 7-101(A)(2); 7-101(A)(3); 7-102(A)(5).

3. That petitioner failed to sustain the burden of proof that respondent was guilty of unprofessional conduct in Count II.

The Office of Disciplinary Counsel in its brief sur exceptions is in accord with the hearing committee's findings of fact and conclusions of law regarding Charges I and III of the petition for discipline. Their exceptions go to the hearing committee's recommendations that respondent be suspended from the practice of law for a period of six months. Petitioner urged suspension from the practice of law for a period of not less than two years.

## II. DISCUSSION

At the argument before the specially designated panel consisting of board members John C. Anderson, Henry T. Reath and Raymond Pearlstine, argument was made on behalf of respondent that the proceedings were defective in limine because of two procedural defects. The first proposition is that Mr. [ ], the hearing committee chairman, should have recused himself because the chairman and Judge [G], a key prosecution witness, were both members of a three member Judicial Evaluation Committee of the [ ] Bar Association. Cases are cited in the brief prepared and submitted by [ ], Esq., attorney for respondent, citing the general proposition of law "denouncing as illegal everything which interferes with the entire impartiality of every legal tribunal." In the case of Gardner v. Repasky, 434 Pa. 126, 252 A. 2d 704 (1969), it was cited by counsel for respondent to the effect that any tribunal permitted by law to try cases in controversies must not only be unbiased, but must avoid even the appearance of bias.

The reading of that case reveals that the bias was obvious in that a member of the fire board, which originally complained against a policeman, was also a member of the Civil Service Commission which heard appellant, and that he cast the deciding vote for suspension of the policeman in a two-to-one commission report.

It is obvious that a man cannot sit as a judge when he is a member of a board which has brought the accusation. In Com. v. American Bankers Insurance Company of Florida, 26 Pa. Commonwealth Ct. 189, 363 A. 2d 874 (1976), it was held that where there is a commingling of functions of the prosecutorial and adjudicatory functions of the

department of insurance, which are insufficiently insulated from each other, the proceedings are invalid.

In Com. v. Perry, 468 Pa. 515, 364 A. 2d 312 (1976), it was held that the fact that a trial judge was acquainted with the victim in a policeman's murder and a mourner at his funeral, did not require the judge to recuse himself. The court, continuing in its opinion, stated that acquaintance between the judge and the victim of a crime is not in itself sufficient to require the trial judge to recuse himself from trial of the defendant accused of that crime. However, the court went on to state at page 524: "[W]e recognize that this case is controlled by the general principle that the trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in criminal cases or whenever he believes his impartiality can reasonably be questioned."

It has often been stated that a trial judge should avoid not only impropriety, but also the appearance of impropriety. However, in the cases wherein the issue has been considered, the trial judge has had either a pecuniary interest in the controversy or a consanguinal relationship with a party to the litigation.

When the objection was first offered to the hearing committee it was denied, as was stated in the hearing committee's report:

"It was the feeling of the panel then, as it is now, that the relationship of the chairman and Judge [E] as fellow members of a Commission was not such as would form the basis for disqualification. Indeed, if such were the case lawyers serving on Hearing Committees would literally have to resign

from all Bar Associations and Professional Associations and Committees thereof in order to sit as panel members. We agree with the respondent that no conflict exists and hence no basis for disqualification."

A second argument raised before the panel had to do with the furnishing to respondent and his counsel of a memorandum prepared by petitioner of his interview with Judge [E]. It was argued that the material was governed by Jencks v. U.S., 353 U.S. 657 (1957). It is our opinion that respondent was entitled to the requested evidence on the basis of the decision of the Supreme Court in Jencks, supra. As was stated by the Supreme Court of Pennsylvania in Schlesinger Appeal, 404 Pa. 584, 613 (1961): "A disbarment proceeding is every bit as serious as a criminal trial and often far more so. . . . "

The contention that the Jencks case is only applicable to criminal cases was disposed of in the language of the Supreme Court in Schlesinger Appeal, supra, at pages 612 and 613, Jones, *C.J.*, stating at page 613: "Nor is the rule of the Jencks case peculiar to federal criminal prosecutions; it is a requirement of due process of law."

At argument counsel for petitioner submitted notes of testimony which clearly showed that the material required was in fact submitted to counsel for the respondent and, therefore, this contention is wholly without merit.

We are indeed favored with a thorough and carefully prepared report of the hearing committee and the findings of fact set forth therein are adopted.

Respondent's preparation and filing with the court of a false and fraudulent petition in order to obtain compensation for legal services which he did

not perform and his preparation and filing of a complaint in trespass containing false information in an effort to prevent the dismissal of his clients' lawsuit because of the running of the statute of limitations, are supported by the evidence supporting the findings as to Charges I and III.

## III. RECOMMENDATION

On November 10, 1977, a dispositional hearing was held, at which time [   ], Esq., former attorney in charge of the Committee of Censors of the [   ] Bar Association, testified and identified records of that committee dealing with complaints filed and dispositions made of charges involving respondent. These documents evidenced the fact that on two prior occasions respondent had been reprimanded on complaints charging neglect. The hearing committee accordingly recommended that respondent be suspended from the practice of law for six months. In concluding that a six month period of suspension was warranted under the circumstances, the hearing committee, in support of its recommendation made the following comments:

"The Committee does not and cannot view respondent's actions in Charges 1 and 3 as involving simple, benign neglect, though indeed it is our view that the genesis of the violation of the disciplinary rules in Charge 3 was neglect.

"With respect to Charge 1, the actions of the respondent in filing a false petition for fees was not, in our view, an act performed in a moment of haste in a busy practice, but rather was a deliberate act on the part of respondent to secure fees from the

Commonwealth to which he had no entitlement. Lest there be any doubt concerning his motive, one need only refer to the letter he wrote in 1973 in response to the letter of inquiry from the office of disciplinary counsel. In the most favorable light, it demonstrated an attitude of arrogant indifference. In the most unfavorable light, it demonstrated that his true motive was to secure a fee to which he was not entitled.

"With respect to Charge 3, it is clear that respondent prepared and filed a false pleading for the sole purpose of avoiding a complete defense to the cause of action of his client, which defense came about solely as a result of his neglect. At the hearing he persisted in his contention that the accident occurred on March 1, despite the coincidence of dates and the obvious alteration of the pleading as described in Mr. [  ]'s testimony. As a committee, we would prefer not to recommend a form of discipline that would deprive respondent of his living as an attorney. On the other hand, the nature and quality of the breaches are such that we would fail in our duty if we did not recommend some form of discipline beyond mere words. We, therefore, recommend that respondent be suspended from the practice of law for a period of six months."

The office of disciplinary counsel urged that respondent be suspended from the practice of law for a period of not less than two years.

It is our opinion that the maintenance of the integrity of the profession in the eyes of the public, the protection of the public from unethical and incompetent lawyers and the deterrence of other lawyers from engaging in unprofessional conduct will be served in this case by the affirmance of the hearing

committee's recommendation that respondent be suspended from the practice of law for a period of six months.

John C. Anderson dissented.

Henry T. Reath dissented and a copy of his dissenting opinion is attached.

## DISSENTING OPINION

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

REATH, *Board Member*, November 20, 1978— In this case respondent was found to have intentionally and willfully filed a false and fraudulent petition to the court in an effort to receive counsel fees for services that he had not performed.

Additionally, in another matter, he backdated a complaint and falsely misstated the date of an accident to cover up his failure to file a complaint in trespass.

For the reasons ably stated in disciplinary counsel's brief in support of its exceptions to the hearing committee's recommendation, I agree that nothing less than a two year suspension will adequately vindicate the public interest and reinforce maintenance by the legal profession of the highest standards of integrity and professional ethics which we, and your honorable court are charged with zealously protecting.

## ORDER

EAGEN, *C.J.*, And now, to wit, January 16, 1979, the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania, dated November 20, 1978, is rejected; and it is ordered,

that the said [Respondent], Esq. of [   ], be subjected to public censure by the Supreme Court as provided in Rule 204(3) of the Rules of Disciplinary Enforcement at the session of this court commencing April 16, 1979, at [   ].

Mr. Justice O'Brien did not participate in this matter.

Mr. Chief Justice Eagen and Mr. Justice Roberts would accept the recommendation of the Disciplinary Board and impose a suspension of six months.

## PUBLIC CENSURE

CHIEF JUSTICE EAGEN:

Please, approach the bench.

Where were you on Tuesday?

RESPONDENT: I was in a doctor's office, sir.

CHIEF JUSTICE EAGEN: Was that a sudden attack?

RESPONDENT: I was very nervous and I had chest pains and I went to the doctor early in the morning and I informed the doctor to call my office or to call the court, and he saw fit to call the court.

CHIEF JUSTICE EAGEN: As you know, you were cited by the Disciplinary Board of this Court for violations of the Code of Professional Responsibility.

After an extended hearing, the board found that you had neglected a client's interest by failing to file a complaint in an action in which you had been engaged as counsel within the time permitted by the statute of limitations.

Then, to cover up your own neglect, you had filed a complaint, and alleged therein a false, or at least an inaccurate date as to when the cause of action arose in order that it would appear that the action had been filed timely.

They also found that in a case wherein you were court-appointed, one of two counsel appointed to represent a defendant in a criminal case, that you had filed a petition with the court claiming certain fees for services rendered, of which the accuracy or honesty was seriously questioned.

If a lawyer isn't an honest person, honest to the enth degree, there is no reason being a member of the Bar, the legal profession, because if a man can't be honest, he can just bring disservice to the administration of justice, to the profession as well as to himself.

Now, as you know, the board recommended that you be suspended for six months from the practice of law, but by a majority vote of this court decided that because of certain circumstances, and the traumatic blow to you in your practice, the suspension from the practice might entail, they decided that you would be publicly censured, instead of suspended from the practice of law.

You are quoted in the morning papers, and of course, I know that the papers aren't always correct, but you are quoted in the morning papers as saying that you have been vindicated by voting to merely publicly censure you. "The Supreme Court . . . " quoting you, "The Supreme Court, in their wisdom, found that the charges were not true."

Of course you misunderstood the situation completely.

RESPONDENT: Sir, I did not say what is in that paper.

CHIEF JUSTICE EAGEN: We'll take your word for that, because we know the newspapers are not always accurate.

But, public censure is a very serious thing.

When you were admitted to the practice of law, there was a file made in the records of this court indicating that you were admitted to practice law. The petition was filed, and in conjunction therewith that was presented to this court for permission for you to practice law.

The record of this public censure is going to be made a part of that file. From now on, as long as these papers and this court exist, that mark on your professional career will be part of the records of this court.

So that if you have any idea that the public censure is something to be taken very lightly, and I take your word that you didn't say what was said in the paper, I hope you will disavow yourself of any such thoughts.

The image of the legal profession is not good in the public mind. The reason for that is that the entire profession is not to blame, but it is just that a relatively few or small percentage of the lawyers who are licensed, the people who are licensed to practice law who engage in such conduct of dishonesty or neglect of their client, they just put a spot or blur on the whole profession, and apparently you are one of that small percentage.

The purpose of this public censure is to warn you, and also to warn every other member of the legal profession in Pennsylvania that this court is not going to stand for any misconduct on the part of lawyers where it involves dishonesty or neglect of client's interests, or what have you.

If you can't live up to the Code of Professional Responsibility, then resign from the Bar and go out and get another job driving a bus or something like that.

That is the message of this public censure this

morning. If you don't hear it, the consequences in the future may be very, very serious, as far as you are concerned.

You are now excused.